# CASES DETERMINED

# August Term, 1891.

THE WISCONSIN CENTRAL RAILROAD COMPANY, Appellant,
vs. ASHLAND COUNTY and another, Respondents.

*November 21 — December 15, 1891.*

(1) *Equity: Trial on merits: When defects in answer immaterial.* (2–5)
*Taxation: Irregularities, when available to set aside taxes.* (6–8)
*Town meeting: Adjournment to another place.*

1. An action having been fully tried on the merits, the plaintiff's
   right to equitable relief must stand or fall upon the merits, and a
   judgment for the defendant will not be reversed on the ground
   that the trial court erred in refusing to strike out the answer as
   frivolous and give judgment for plaintiff on the pleadings.
2. The omission from the tax roll of a sum which had been levied for
   " school purposes," and the addition of a corresponding amount to
   the item " for all other purposes,"— the aggregate amount in the
   tax roll not being greater than the amount actually levied,— is not
   such an irregularity as would require a court of equity to restrain
   the collection of the taxes.
3. Irregularities in the proceedings with reference to certain school
   and highway taxes, prior to the town meeting at which they were
   levied,— being the failure of certain sub-school-districts to hold an-
   nual meetings as required by law; the failure of the clerks thereof
   to transmit reports as required by law; the voting of the school
   taxes in the absence of such reports; the failure of the secretary
   of the school board to make to the town board a statement of re-
   ceipts and disbursements; and the failure of the town board to ren-
   der to the board of audit the written statement required by sec. 1226,
   R. S.,— are *held* not to be such as to require a court of equity to de-
   clare the taxes invalid and restrain their collection.
4. The objection that lands of unequal value were arbitrarily assessed at
   a uniform rate, if not first made before the board of review, is not

The Wisconsin Central R. Co. vs. Ashland County and another.

available in an action to set aside the taxes. R. S. sec. 1061, as amended by ch. 283, Laws of 1887.

5. The facts that in making out the tax roll the town clerk in many instances carried out valuations different from those carried out on the assessment roll, the amounts of the changes made varying from $1 to $800, and that the aggregate amount of the property of the town, appearing from the tax roll, was greater than the aggregate valuation given in the statement annexed thereto, are not available as ground for equitable relief, where it does not appear that the plaintiff was called upon to pay more than its just and equal proportion of the taxes levied and carried out upon the tax roll.

6. Sec. 784, R. S. (providing that "whenever it shall become impossible or inconvenient to hold a town meeting at the place designated therefor, the town board of inspectors, or a majority of them, after having assembled at or as near as practicable to such place and opened the meeting, and before receiving any votes, may adjourn such meeting to the nearest convenient place for holding the same," etc.), leaves the question of convenience to the good judgment of the board; and it need not affirmatively appear that it was impossible or inconvenient to hold the meeting at the place designated, or that the place to which it was adjourned was the nearest convenient place.

7. The failure, upon such an adjournment, to cause proclamation thereof to be made and to station a constable or other person at the place where the meeting was opened to notify electors of the place to which it had been adjourned, as required by sec. 784, R. S., does not invalidate the meeting, where it does not appear that any elector was thereby kept from the meeting.

8. A town meeting was to be held at the court house on April 3, at 9 o'clock A. M. At some time prior to 9 o'clock the town board met at the court house and voted to adjourn, as inspectors, "to room 15, Shores block." Pursuant to such adjournment the board met in said room, and their meeting was called to order by the chairman. At 9 o'clock clerks of election were appointed by the board, and proclamation was made declaring the polls open. *Held*, that there was a valid town meeting. WINSLOW, J., and LYON, J., dissent, being of the opinion that as the town meeting was not opened at the court house, and was not adjourned to any other place, it was not legally held.

APPEAL from the Circuit Court for *Ashland* County. This action was commenced April 6, 1889, to cancel and set aside the assessment of taxes upon the lands of the

plaintiff in the town of Ashland, in said county, for the year 1888, on the ground of numerous irregularities alleged, and for a perpetual injunction restraining the defendants from selling the same, or in any manner attempting to enforce the collection thereof. The irregularities sufficiently appear in the findings. The answer, after admitting certain allegations of the complaint, alleges, upon information and belief, that each and every material allegation of the said complaint, not so admitted, is false and untrue, and therefore denies the same. At the close of the trial the court found, as matters of fact, in effect:

1. That the plaintiff is the owner of the lands described, and was such at the time said taxes were carried out upon the tax roll, and that said lands are within said town, and are wild and unoccupied.

2. That at the annual town meeting of said town held April 5, 1887, a resolution was adopted to the effect that the next town meeting of the town should be held at the court house in the city of Ashland; that it appeared from the record of the annual town meeting of the town for 1888 that the town board of said town met at the court house at some time prior to 9 o'clock A. M. of April 3, 1888, and voted to adjourn, as inspectors, to room 15, Shores block, and that said board met pursuant to adjournment in said room, their meeting being called to order by the chairman, G. Walker, and that, at 9 o'clock A. M., J. C. Smyser and A. C. Kimberly were appointed clerks of election by the board, and proclamation was made declaring the polls open; that the town meeting of said town for 1888 was not convened or held, except as therein stated.

3. That sub-school-districts Nos. 2 and 8 did not hold annual meetings in 1887, and the clerks of said sub-school-districts, respectively, did not at any time make and transmit to the secretary of the town board of school directors the written reports required by law; that said town had

adopted the township system of schools; that October 3, 1887, the town board of school directors voted that the following estimate of appropriations needed for school purposes for the ensuing year be adopted, to wit: For building and repairs, $4,000; teachers' salaries, $3,500; fuel, $200; incidental expenses, $300; making a total for school purposes of $8,000; that the secretary of the board of school directors did not make to the board of supervisors of the town a written statement showing receipts of money and disbursements for the previous year.

4. That the supervisors of the town did not render to the board of audit, at its annual meeting in 1888, a statement in writing as required by section 1226, R. S., but said board of audit recommended the following appropriations to the town meeting, namely: For school purposes, $8,000; for general fund, $3,000; for roads, $1,000.

5. That at the town meeting held April 3, 1888, in room 15, Shores block, resolutions to the following effect appeared from the record thereof to have been adopted: That the town board of supervisors be, and are hereby, ordered to assess in the next tax roll a highway tax of $1,000 in addition to the mill tax; that the highway taxes, except poll tax, for the ensuing year in said town be collected in money; that a committee of three electors of said town therein named be, and they are hereby, authorized to examine the premises in the town therein described; that said committee is hereby authorized and empowered and directed (if in their opinion) to construct bridges across so that passage may be had across Silver creek and Trout brook, or either of them; that it was therein further directed that the expenses of such improvement, after being audited and allowed by the town board of supervisors, be assessed and collected with the next annual tax.

6. That all the lands assessed in two government townships and the first twenty-three sections of another govern-

ment township were assessed at a uniform rate of $100 per forty-acre tract, and that said lands are not of uniform value, but differ with reference to railroads and the Penokee iron range, which respectively traverse certain of said lands.

7. That the town clerk, in making out the tax roll for 1888, included therein omitted taxes for previous years to the amount of $907.45, but did not separately enter upon said roll the property upon which said remitted taxes were assessed for each year of such omission, affixing a valuation to each entry for each of the former years, but, on the contrary, extended such omitted taxes against the property on the single assessment for 1888, without making any separate assessment as a basis for taxes omitted for previous years; that if said lands had been separately assessed for said omitted taxes, the additional valuation appearing upon the assessment roll therefor would have amounted to $26,300.

8. That the town clerk, in making out the tax roll of the town for 1888, in about 615 cases carried out other and different valuations upon the tax roll from those carried out on the assessment roll; that in about 438 cases the amount of the valuation appearing upon the tax roll is different from the amount of the valuation of the same land as stated upon the assessment roll; that the amounts of the changes made by the town clerk in the valuations vary from $1 to $800; that the aggregate amount of the property of the town, as appeared by the tax roll, is $744,472.25; that the aggregate valuation, as given in the statement annexed to the tax roll, is $712,062.25.

9. That the statement annexed to the tax roll of taxes levied in the town for 1888 contained the following items: Aggregate state tax, $3,900.03; aggregate county tax, $7,171.97; town taxes, current expenses, $3,000; school taxes, $6,000; all other expenses, $6,359.74; aggregate

town taxes, $15,359.74; aggregate all taxes, $26,431.69; that there is a discrepancy between the amount levied for school purposes and all other purposes at the town meeting and by the board of supervisors, and the amount carried out on the statement annexed to the tax roll, which discrepancy is unexplained by the testimony in the case.

10. That the following taxes were levied at the town meeting for 1888, and by the supervisors of said town for said year, namely: For school purposes, $8,000; general town purposes, $3,000; roads, exclusive of mill tax, $1,000; highway mill tax, $3,424.12; total, $15,424.12; and that the total amount of taxes carried out upon the tax roll of said town for said year was the sum of $15,359.74.

11. That the amount of said town taxes carried out against the lands of the plaintiff is its proper proportion of said sum of $15,359.74, as appeared by the assessment and tax rolls of said town.

12. That it does not appear from the evidence that the plaintiff was called upon to pay more than its just and equal proportion of said taxes levied and carried out upon said tax roll for 1888.

As a conclusion of law, the court found that the defendants were entitled to a judgment against the plaintiff of " no cause of action," with costs, and the clerk of the court was thereby directed to enter judgment accordingly. From the judgment entered thereon accordingly the plaintiff appeals.

For the appellant there was a brief by *Howard Morris,* attorney, and *K. K. Kennan,* of counsel, and oral argument by *Mr. Morris.* They contended, *inter alia,* that the plaintiff was entitled to judgment upon the pleadings, and the court erred in denying its motion therefor. The denial, upon information and belief, of matters of public record was clearly evasive and bad. *Hathaway v. Baldwin,* 17 Wis. 616; *Mills v. Jefferson,* 20 id. 50; *Brown v. La Crosse*

*C. G. L. & C. Co.* 21 id. 51; *Knox v. Galligan,* id. 470; *State on compl. Kennedy v. McGarry,* id. 496; *Milwaukee v. O'Sullivan,* 25 id. 666; *Goodell v. Blumer,* 41 id. 436; *Tierney v. Union L. Co.* 47 id. 248. The denial, being of "material" allegations only, is bad. *Edmonson v. Phillips,* 73 Mo. 57; Bliss, Code Pl. sec. 331; *Pry v. H. & St. J. R. Co.* 73 Mo. 123; *Collins v. Trotter,* 81 id. 275; *Matteson v. Smith,* 1 Rob. (N. Y.), 706; *Montour v. Purdy,* 11 Minn. 384. The provisions of law as to the statement to be furnished by the secretary of the school board to the board of supervisors should be held mandatory, as is the statement required to be rendered by the clerks of school districts to town clerks under the district system. *Matteson v. Rosendale,* 37 Wis. 254; *Arnold v. Juneau Co.* 43 id. 627; *Plumer v. Marathon Co.* 46 id. 179; *Powell v. St. Croix Co.* id. 210. The disregard of the provisions of sec. 784, R. S., rendered the alleged town meeting, and all the town taxes levied thereat, wholly void. *State ex rel. Bruce v. Davidson,* 32 Wis. 114; Burroughs, Taxation, 396; Blackwell, Tax Tit. secs. 151, 152, 160; *Chamberlain v. Dover,* 13 Me. 466; *Sherwin v. Bugbee,* 17 Vt. 337; *Moor v. Newfield,* 4 Me. 44; *Foster v. Scharff,* 15 Ohio St. 532; Dillon, Mun. Corp. (3d ed.), secs. 264, 266; Cooley, Taxation (2d ed.), 334.

For the respondents there was a brief by *Tomkins & Merrill,* and oral argument by *W. M. Tomkins.*

CASSODAY, J. When the cause was called for trial, and before offering any evidence, the plaintiff moved to strike out the answer as frivolous, and for judgment in its favor upon the pleadings. This motion was based upon the fact that the answer, after admitting certain facts, alleges, upon information and belief, in effect, that each and every material allegation of the complaint not so admitted "is false and untrue, and therefore denies the same." Error is assigned because the court overruled such motion. It is

enough here to say that, although the complaint is mostly based upon public records, it is almost wholly upon information and belief; and besides, the action having been fully tried upon the merits, the plaintiff's right to equitable relief must stand or fall upon the merits.

The learned counsel for the plaintiff assigns error because the court, in the ninth finding, found that there was a discrepancy, unexplained by the testimony, between the amount of taxes actually levied for school purposes and all other purposes at the town meeting and by the town board, and the amount carried out on the statement annexed to the tax roll, and he insists that the court should have found as proposed by him. The statement of the several amounts found as being annexed to the tax roll for 1888 are all contained in the proposed finding. Each contains $6,000, and no more, for school purposes, and $6,359.74 "for all other purposes" not therein otherwise mentioned. Of this $6,359.74, it is admitted in the record that $4,424.12 was for road purposes, or, as the proposed finding puts it, $1,000 for highway tax, exclusive of the two-mill tax, which was $1,424.12, and $2,000 for two bridges, one over Trout brook and the other over Silver creek. This would leave a balance under the head of "all other purposes" of $1,935.62, of which counsel claim $907.45 was for taxes found to be omitted in previous years, and that the balance of $1,028.17 was never voted or assessed for any purpose. But the court by the third finding found, in effect, that October 3, 1887, the town board of school directors voted that the estimate of appropriations needed for school purposes for the ensuing year be $8,000, giving the items as mentioned in the foregoing statement; and by the fourth finding found, in effect, that at the annual meeting in 1888 the board of audit recommended an appropriation of the same amount for school purposes; and by the tenth finding found that there was actually levied at the town

meeting for the year 1888, and by the town board for such year, $8,000 for school purposes. By the ninth finding the court found that the statement annexed to the tax roll levied in the town for 1888 contained $15,359.74 for the aggregate of town taxes, and the findings proposed by the plaintiff's counsel contain the same amount as the aggregate of town taxes. By the tenth finding the court found that the total amount of town taxes levied at the town meeting for 1888, and by the town board for that year, was $15,424.12, but that the total amount carried out upon the tax roll of the town for that year was only $15,359.74; and by the eleventh and twelfth findings it was found, in effect, that the amount of said town taxes so carried out against the plaintiff's lands was its proper proportion of said sum of $15,359.74, and that the plaintiff had not been called upon to pay more than its just and equal proportion of said taxes levied and carried out upon the tax roll for that year.

These several findings are sustained by the evidence. Thus it appears that there was omitted from the tax roll $2,000, which had in fact been levied for " school purposes," and a corresponding amount arbitrarily added to the item therein for " all other purposes; " so that the aggregate amount in the tax roll was really less than the amount actually levied and assessed, and that, too, without taking into account the $907.45 of taxes which had been omitted in previous years. Since the plaintiff was not required to pay any more than its proportionate share of the taxes actually levied and assessed, the question recurs whether the irregularity thus pointed out required the trial court, as a court of equity, to restrain the collection of the taxes in the case at bar. The statute expressly requires this court to disregard any error or defect in the pleadings or proceedings not affecting the substantial rights of the appellant. Sec. 2829, R. S. This court has frequently refused to re-

verse by reason of errors or defects not affecting the substantial rights of the appellant. See Sanborn & Berryman's notes to the last section. The sole object of allowing an appeal is to benefit a "party aggrieved." Sec. 3048, R. S.; *Ackley v. Vilas*, 79 Wis. 160, and cases there cited.

Counsel insists that the taxes are invalid by reason of defective proceedings in reference to the school and highway taxes prior to the town meeting. These irregularities are indicated in the findings of the court, and are mentioned in the foregoing statement. They are to the effect that sub-school-districts numbered 2 and 8, respectively, did not hold annual meetings, as required by law, in 1887; that the respective clerks thereof did not transmit to the secretary of the town board of school directors a written verified report for the year 1887, as required by law; that the school taxes for the ensuing year were voted in the absence of such reports; that the secretary of the school board did not make to the board of supervisors a written statement showing the moneys received and disbursed for the year 1887; that the town board did not render to the board of audit, at its annual meeting in 1888, the written statement required by secs. 820, 1226, R. S. In *Fifield v. Marinette Co.* 62 Wis. 532, the trial court, on the default of the defendants, set aside certain tax certificates as a cloud upon the plaintiff's title, by reason of the assessor's failure to sign or verify the assessment roll on which the sale was made upon which the certificates were issued; and this court reversed the judgment, and held that a "court of equity will not set aside or enjoin the collection of a tax for mere irregularities in the tax proceedings, unless the taxes justly chargeable to the property are first paid or tendered in all cases where such taxes are ascertainable. A complaint which does not allege in direct terms the injustice and inequality of the tax, and further allege a state of facts which, if proved on the trial, would establish the truth of the gen-

eral allegation of its injustice, does not state a cause of
action for equitable relief, unless there be a further allega-
gation of an offer to pay the taxes justly chargeable to the
property of the plaintiff on account of which he seeks re-
lief." Our late Brother Taylor in that case reviewed the
authorities, and said, in effect, that nothing contained in
former decisions was intended to or has "changed the rule
which was established by this court as early as the case of
*Mills v. Gleason*, 11 Wis. 470, that a court of equity will
not interfere to declare a tax invalid and restrain its collec-
tion, unless the objections to the proceedings are such as to
go to the very groundwork of the tax, and necessarily af-
fect materially its principle, and show that it must neces-
sarily be unjust and unequal." 62 Wis. 535. He there
cites fourteen cases, in each of which "this rule has been
adhered to and reiterated." The case of *Fifield v. Mari-
nette Co., supra,* has been followed, and this same rule has
since been affirmed by this court, in *Wisconsin Cent. R.
Co. v. Lincoln Co.* 67 Wis. 478; *Canfield v. Bayfield Co.* 74
Wis. 64; *Green Bay & M. Canal Co. v. Outagamie Co.* 76
Wis. 588. That case has been approvingly cited and the
rule therein held sanctioned in other states. *Farrington v.
New England Inv. Co.* 1 N. Dak. 102; *Avant v. Flynn* (S. D.)
49 N. W. Rep. 17. The several cases cited cover a great va-
riety of irregularities and failures to comply with statutory
requirements, which have been held to be unavailing to set
aside or restrain tax proceedings in a court of equity. The
rule in equity, thus firmly established in this court, disposes
of the several irregularities mentioned, and, in effect, others
to be mentioned.

It is claimed that the taxes were void by reason of sev-
eral thousand acres of land of unequal value being arbitra-
rily assessed at the uniform rate of $100 for each forty.
But the statute prescribing the duties of the board of re-
view, and in force when the assessment in question was

made, provided that "no person or corporation shall be heard, in any action, suit, or proceeding, to question the equality of any assessment, unless they shall have first made such objection before the said board of review, and made offer to sustain the same by competent proof. In which case it shall be the duty of the said board to inquire into the fact of such equality." Sec. 1061, R. S., as amended by ch. 283, Laws of 1887. No such objection having been made by the plaintiff before such board, it thereby became unavailing in this action. *Boorman v. Juneau Co.* 76 Wis. 550; *Bratton v. Johnson,* 76 Wis. 430, and cases cited in the opinions. The method of making up the tax roll by the clerk as indicated in the facts found by the court mentioned in the foregoing statement, is unavailing as a ground for equitable relief, upon the principles already stated.

This brings us to the alleged illegality of the town meeting at which the taxes in question were assessed. At the annual town meeting of the town, held April 5, 1887, a resolution was adopted to the effect that the next town meeting of the town should be held at the court house in the city of Ashland. It was lawful for the town to thus provide for holding its next town meeting in the city. Ch. 162, Laws of 1883; S. & B. Ann. Stats. sec. 783a. The time for opening the polls at such town meeting to be so held at the court house in the city was April 3, 1888, at 9 A. M. Secs. 29, 782, S. & B. Ann. Stats. The town board met at the time and place named, and adjourned to the Shores block, as mentioned in the foregoing statement. The statute provides that, " whenever it shall become impossible *or inconvenient* to hold a town meeting. at the place designated therefor, the town board of inspectors, *or a majority of them,* after having assembled *at or as near* as practicable to such place *and opened the meeting,* and before receiving any votes, may adjourn *such meeting* to the nearest *convenient* place for holding the same, and at such adjourned place forthwith

proceed with the meeting. Upon such adjournment the board of inspectors shall cause proclamation thereof to be made, and shall station a constable or some other proper person at the place where such meeting was opened, to notify all electors arriving at such place that the meeting has been adjourned, and the place to which it has been adjourned." Sec. 784, R. S. The precise time of meeting at the court house does not appear. The court found that it was some time prior to 9 A. M. That would be true, in a sense, if they met a few minutes after the previous midnight. The records in evidence show, in effect, that the meeting was after due and legal notice; that on motion it was voted that the board adjourned, as inspectors, to room 15, Shores block; that the town board met pursuant to adjournment in that room; that the meeting was called to order by the chairman at 9 o'clock A. M.; that two persons therein named were appointed clerks of election by the board at 9 o'clock A. M., and that proclamation was then made, declaring the polls open.

Since the section of the statute quoted required the board, as inspectors, to proceed at such adjourned place forthwith with the meeting, and, since they did so proceed at 9 o'clock A. M., it may fairly be inferred that the meeting at the court house was, at most, but a few minutes before that time. Besides, the board was composed of officers acting under the sanction of an oath, and some presumptions may be fairly indulged in favor of the legality of their action. *Tainter v. Lucas*, 29 Wis. 375; *State ex rel. Willis v. Prince*, 45 Wis. 613. In speaking of the action of the county boards, it was said by the present chief justice, in *Hark v. Gladwell*, 49 Wis. 177, that "it will not do to apply to the orders and resolutions of such bodies nice verbal criticism and strict parliamentary distinctions, because the business is transacted generally by plain men, not familiar with parliamentary law. Therefore their proceedings must be lib-

The Wisconsin Central R. Co. vs. Ashland County and another.

erally construed, in order to get at the real intent and meaning of the body."

But it is contended, in effect, that even if the town board met at the court house at substantially the time prescribed by law, yet that it does not affirmatively appear from the findings or the records that it was "impossible or inconvenient" to hold the meeting at that place. Manifestly the statute did not require that it should be impossible to hold it at that place; otherwise the words "or inconvenient" would not have been used in the statute. Such words are flexible in their meaning, and were necessarily addressed to the good judgment of the board. The same may be said of the objection that it does not affirmatively appear that room 15, Shores block, was "the nearest convenient place" to the court house for holding such meeting.

But it is further contended, in effect, that it does not affirmatively appear that the board opened the meeting at the court house, or upon such adjournment caused proclamation thereof to be made, etc. It will be observed that the section quoted does not prescribe that any persons other than the town board shall be included in such meeting at the time of such adjournment. It could only include those electors of the town who happened to be present. There is a possibility of its including the great body of such electors, or even all. But the probabilities, confirmed by experience, are that but very few, if any, aside from the members of the board, are likely to be present at the opening of such meeting. It is enough to know that the statute only requires the presence of the town board, and it does not even require that they should all be present. The language of the section is that "the town board of inspectors, *or a majority of them*, after having *assembled . . . and opened the meeting*, . . . may adjourn *such* meeting," etc. Manifestly it is not essential that any one should be present, at the time of such adjournment, except a ma-

jority of such board, consisting of two persons who act as inspectors. The bystanders are only to participate in such adjournment in case of the death, absence, or refusal of a majority of such board to act, and then only in choosing other persons to act as such board as prescribed in the statute. Sec. 25, R. S. Thus the assembling of two members of the board, or others chosen in their places, is all that is absolutely essential to constitute such meeting which may so open and so adjourn. Here it appears affirmatively that the town board met at the court house, and "*on motion* . . . voted that the board adjourn, as inspectors," to the place named. Manifestly the meeting of the three members of the board was in fact opened when that motion was thus made, put, voted upon, and carried.

It is true the statute quoted requires that, upon such adjournment, the board shall cause proclamation thereof to be made, etc. The only purpose of requiring such proclamation to be made is to inform the electors who happen to be present at the time, and who might not otherwise know, of what had transpired. The adjournment must necessarily precede the proclamation of it. At most, the proclamation could only be co-extensive with the persons present to be so informed. If none were present except the members of the board who voted the adjournment upon the motion made, then the making of such proclamation would furnish no information to any one. The object of such proclamation is similar to the object of the requirement to station a constable or other proper person at the place where the meeting was so opened, to notify such electors as might subsequently arrive of such adjournment and the place to which the meeting had been so adjourned. If there is any difference in their importance, it may be inferred that the proclamation is of the least importance, since those present at the time of such adjournment would be very likely to ascertain the fact.

The Wisconsin Central R. Co. vs. Ashland County and another.

There are many things required by the statutes to be done at such meetings which are purely directory. *State ex rel. Mitchell v. Decatur,* 58 Wis. 291; *People v. Cook,* 8 N. Y. 67. There is nothing in the record to show that any elector of the town was kept from the meeting by reason of any want of proclamation, or the failure to station a person at the court house to inform those who might subsequently arrive. If any were absent, it might have been shown, and to entitle the plaintiff to equitable relief it should have been shown. It has been held that, if the result of the election has not been affected by the neglect to close the polls at the prescribed time, the irregularity will be disregarded. *Holland v. Davies,* 36 Ark. 446; *Knox Co. v. Davis,* 63 Ill. 405; *Cleland v. Porter,* 74 Ill. 76. So it has been held that closing the polls one hour before the time prescribed will not avoid the election, if it does not appear that voters were thereby deprived of their right. *People v. Cook,* 8 N. Y. 67. The same principle is applicable to such want of proclamation or failure to so station a person at the court house.

We must conclude that there was a valid town meeting. To hold otherwise would require a too strained and finical construction of the statutes for the practical administration of town affairs.

*By the Court.*— The judgment of the circuit court is affirmed.

WINSLOW, J. It is clear to my mind that the alleged town meeting, at which the town taxes in question were levied, was in fact no legal meeting.

The statute provides that whenever it is impossible or inconvenient to hold the meeting at the designated place, the inspectors, after having assembled at or as near as practicable to such place, " and opened the meeting," may adjourn " such meeting " to the nearest convenient place, and

at such adjourned place "proceed with the meeting." The statute provides for an adjournment of the "town meeting," not for an adjournment of the board of inspectors. In the present case the inspectors met at the proper place, and, without opening the town meeting, adjourned as inspectors to another place where the town meeting was first opened. It seems to me indispensable under the statute that the town meeting should be opened at the designated place. The meeting in question was not opened at the proper place, was not adjourned to any other place, and consequently was never legally held. The situation is the same as if the inspectors had proceeded in the first instance to the Shores block and assumed to hold the meeting. No one would claim, under such circumstances, that the meeting was legally held. In my judgment the town taxes are absolutely void.

LYON, J. I concur in the views of Mr. Justice WINSLOW, above expressed.