THE STATE EX REL. FOSTER, Appellant, vs. WILLIAMS, Village Clerk, Respondent.

*September 29—October 18, 1904.*

*Taxation: Assessor: Board of review: Prima facie assessment: Impeachment: Evidence: Statutes: Judgments: Practice.*

1. Where no affidavit fixing the amount of relator's property was delivered to the assessor until long after the assessment roll had been delivered to the board of review, the true assessment, which is *prima facie* correct, is that fixed by the assessor, which relator has no right to have reduced except upon evidence reasonably tending to show that it was excessive.

2. Where evidence offered to show an excessive assessment is that of the taxpayer's own agent, it is to be construed most strongly against him.

3. Relator was assessed by the assessor for moneys, accounts, credits, bonds, notes, and other securities, after deducting *bona fide* debts, $5,000. The testimony of relator's agent before the board of review went no further than to deny any credits, other than an average indebtedness of about $300 due relator each month from a corporation. It developed that relator had received shortly before the year under consideration a sum of money, alleged to be about $10,000, which amount relator's agent failed to contradict, and there was nowhere in the testimony any denial that this money, or a considerable portion thereof, was still in relator's possession during some or all of the year preceding the assessment. The board of review reduced the assessment to $2,000. *Held*, that the evidence tended, though not conclusively, to establish that the original assessment was wrong, and justified the board of review in making some reduction.

4. Under sec. 2, ch. 284, Laws of 1903 (providing that no person shall be allowed in any action or proceeding to question the amount or valuation of personal property assessed to him unless in person or by agent he shall have first presented his objections thereto before the board of review in the district in which such assessment was made and in good faith presented evidence to such board in support of such objections and made full disclosure before said board, under oath, of all his personal property liable to assessment in such district and the value thereof), if the taxpayer objecting to the assessor's assessment refuses in any degree to answer fully such

inquiries as may tend to develop what property he deems not liable to assessment, and as may test the accuracy and credibility of the statement he volunteers, the statute denies him the benefit of the statement he chooses to make.

5. On *certiorari* to review the action of a board of review in dealing with relator's assessment of personal property, the testimony of relator's agent is *held* to warrant a denial of relief in deference to sec. 2, ch. 284, Laws of 1903.

6. In such case, where judgment of affirmance of the action of the board of review was warranted by the record, that action will not be disturbed because the trial court's reasons would have resulted in dismissal.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

Writ of *certiorari* to bring up action of the board of review of the village of Fairchild, Eau Claire county, with reference to personal property assessment upon the relator. By the return it appeared that the assessment roll returned to the board of review on the last Monday in June, 1903, contained an assessment against the relator for "net amount of moneys, mortgages, accounts, credits, bonds, notes, and other securities, after deducting *bona fide* debts, $5,000." On July 28th, N. C. Foster, as agent for the relator, his daughter, appeared before the board, and filed a written affidavit of the form required by statute for delivery to the assessor, stating certain amounts in each calendar month of the year preceding May 1, 1903, and showing an average of $304.11 under the heading, "Average Amount of Moneys, etc." He was put under oath, and testified that this was merely a statement of the sums due each of these months from the N. C. Foster Lumber Company to relator; that she had no other investments or money due her. He was asked whether he did not make an affidavit that during the previous year she had received some $10,900 in money from that company; admitted that he made some affidavits, and that she received some money, but denied remembering how much; said he knew what she did with her money, and

then refused to answer what she had done with that. It also appears that in presenting the above-mentioned affidavit at the meeting of the bard of review it was handed to the assessor. The board reduced the assessment from $5,000 to $2,000. The circuit court entered judgment of affirmance, from which the relator brings this appeal.

For the appellant the cause was submitted on the brief of *Bundy & Wilcox*.

For the respondent there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*.

DODGE, J. The true assessment, which was *prima facie* correct, and which relator had no right to have reduced, except upon evidence reasonably tending to show that it was excessive, was $5,000; for it does not appear that any affidavit fixing any other amount was delivered to the assessor until long after the roll had been delivered to the board of review, and thus passed out of his control. *State ex rel. Giroux v. Lien,* 108 Wis. 316, 84 N. W. 422; Id., 112 Wis. 282, 87 N. W. 1113. The evidence offered, being that of the relator's own agent, is, of course, to be construed most strongly against her. It went no further than to deny any *credits* held by her other than the indebtedness of the N. C. Foster Lumber Company; but it developed that she had received shortly before the year under consideration a sum of money, and from the failure of the relator's agent to contradict the amount of $10,000 or more, specified in the question put to him, it is a fair assumption that such amount was not far wrong. There was nowhere any denial that this money, or a considerable portion thereof, was still in her possession during some or all of the year preceding May 1, 1904. In this state of the record, it certainly cannot be said either that the evidence was conclusive and undisputed that the sum of $304 measured the average amount of *moneys* and credit items possessed by relator during the year, nor,

indeed, that it conclusively established that the original as-
sessment of $5,000 was wrong. In this connection, however,
it may be said that it may have tended, though not conclu-
sively, to establish the last-mentioned fact; thus justifying
the board of review in making some reduction from the as-
sessment.

There is another reason why relator cannot prevail in
this proceeding, namely, the prohibition thereto enacted by
the last legislature (sec. 2, ch. 284, Laws of 1903):

"No person shall be allowed in any action or proceeding
to question the amount or valuation of personal property
assessed to him unless in person or by agent he shall have
first presented his objections thereto before the board of
review in the district in which such assessment was made
and in good faith presented evidence to such board in sup-
port of such objections and made full disclosure before said
board, under oath, of all his personal property liable to
assessment in such district and the value thereof."

This statute marks a policy worthy of commendation and
of cordial support from all citizens—of course, from courts.
Whatever may be thought of the wisdom of laws attempting
to class credits with other property for taxation, none can
differ as to the importance that such taxation, if imposed,
falls as nearly equally upon such property as its inherent
difficulties will permit. Those difficulties are such as to
render much inequality, probable at the best, with resultant
debauchment of the popular moral sense of the obligation
of each to contribute toward the expense of government in
the proportion fixed by law. Though one may doubt the
wisdom of the inquisitorial methods necessary to even ap-
proximate equality in discovery and assessment of such class
of property, we must recognize that the attempt at such re-
sult imposes work of utmost difficulty on the public officers
charged therewith. Assuming, as we must, that they hon-
estly attempt to perform their duty, they and the public are
entitled that they shall not be successfully attacked in court

without full and frank disclosure from the taxpayer of the superior knowledge which he necessarily has upon the subject. It is perhaps utopian to expect of human selfishness voluntary original information of the amount of such invisible and intangible assets upon which the law would burden the owner with taxation, but when one presents himself to give evidence against the amount which the assessor has fixed in the light, or obscurity, which necessarily surrounds him, it is but right that the taxpayer furnish all the enlightenment in his power without evasion or concealment. It is easy for such protestant to assert, even on oath, that he has no more than a specified amount of such assets "liable to assessment;" and yet, in liberality of construction in his own favor, to omit much that another, though less friendly, construction of the law would render liable. The policy of this statute is that none shall be permitted to stop with such negative pregnant generalizations; that, to render such testimony conclusive upon the board of review, and ultimately upon the government, he shall answer fully to such inquiries as may tend to develop what property he deems not liable to assessment, as also to test the accuracy and credibility of the statement he volunteers. If he refuses this in any degree, the statute very properly denies him benefit from the statement he chooses to make. It cannot be doubted that the conduct of relator's agent disclosed by the record before us brings her within the denunciation of this statute. It is hardly possible that his denial of memory whither she received so large a sum as $10,000 in 1901 was other than evasive. Of course, he may not have remembered the amount exactly, but the general *non mi recordo* could but be, in effect, a refusal to give approximate information which must have been within his knowledge, and his memory also, as the latter might easily have been refreshed. Further than this, however, was the absolute refusal to give information, confessedly possessed by him, as to how such moneys had been disposed of, thus block-

ing the inquiry whether they had been disposed of at all, or were still in relator's possession during the year 1902. The circuit judge, as declared in an opinion filed, denied relator relief in deference to this statute, which action meets our entire approval. If that were the sole ground of such denial, however, there might be question whether a judgment of affirmance were proper—whether the relator should not, merely according to the statute, have been precluded from questioning the assessment by an order dismissing the proceedings. Since we have found, however, that judgment of affirmance was warranted otherwise by the record, that action cannot be disturbed because the trial court's reasons would have resulted merely in dismissal. *State ex rel. Gray v. Oconomowoc*, 104 Wis. 622, 629, 80 N. W. 942.

By the Court.—Judgment affirmed.