VILLAGE OF WESTBY, Respondent, vs. BEKKEDAL and others, Appellants.

*June 3—June 23, 1920.*

*Partnership: Joint adventure: Residence of partnership: Taxation of income: Ascertainment of profits: Partnership operating in two states: Allocation of income: Estoppel to question amount of tax: Failure to appear before board of review: Return made by agent: Personal property taxes as offset: Penalty: Interest.*

1. An agreement whereby a partnership the members of which resided in Wisconsin was to advance forty per cent. of the necessary money and was to have the exclusive control of purchasing, storing, handling, and shipping tobacco, and a partnership the members of which resided in New York was to furnish sixty per cent. of the money and have exclusive control of the sale and disposition of the tobacco, the two firms sharing the profits and losses, creates a partnership under the uniform partnership act (secs. 1724m—1 to 1724m—38, Stats.) and not a joint adventure.

2. The word "income," as used in sub. 3, sec. 1087m—2, Stats., is to be given the same meaning it has in every-day language, and is a profit or gain derived from capital or labor, or both combined; and in determining the income of a partnership it is necessary to deduct from the gross proceeds of sales the expenses, cost of purchasing, storing, handling, and shipping.

3. A partnership has no entity distinct and apart from the persons who compose it.

4. Where it was provided by the agreement between the partnerships that all sales were to be made out of the state, the partnership "resided" equally within the state of New York and the state of Wisconsin within the meaning of sec. 1087m—22, Stats., relating to the situs of income for taxation purposes.

5. Under the agreement the income belonging to the Wisconsin partnership was taxable in this state under sub. 3, sec. 1087m—2, Stats., and the portion of the income apportioned to the New York firm was income derived partly from property and business within the state of Wisconsin and partly from business transacted without the state, and should have been allocated.

6. The Wisconsin partnership was the agent of the New York partnership in making a return for purposes of the income tax, and the New York firm is estopped to dispute the assess-

ment where it failed to appear before the board of review, under sec. 1087m—18, Stats., although the New York firm was not notified of the return or that an assessment was made.

7. Under sec. 1087m—26, defendants in an action to recover income tax are entitled to offset personal property taxes and have the same deducted from the amount of income tax found due.

8. The penalty prescribed by sec. 1090 in the event that a tax is not paid within the time prescribed becomes a part of the tax and payable with it.

9. Under sec. 1126, such income tax bore interest at the rate of twelve per cent. per annum from the 1st day of January until the entry of judgment in an action to recover the same.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Modified and affirmed.*

M. H. Bekkedal & Son are a partnership located at Westby, Wisconsin, engaged in the business of buying, sorting, handling, and shipping of tobacco. E. Rosenwald & Brother are a partnership having its principal office and place of business in the city of New York, and engaged in the selling, handling, and merchandising of tobacco. On March 6, 1917, the two partnerships entered into a contract by the terms of which the *Bekkedals* (party of the second part) were to buy tobacco of 1916 crop, raised in the state of Wisconsin, in joint account with the party of the first part (the *Rosenwalds*), and attend to the packing and handling of the same. The *Rosenwalds* agreed to attend to the marketing of the tobacco so purchased and packed, and apply all the net proceeds of any sales made to the credit of the joint account, as kept on their books.

The contract contained a provision as to the manner in which advances were to be made by each of the parties to the contract, the *Rosenwalds* to advance sixty per cent. and the *Bekkedals* forty per cent. The *Rosenwalds* agreed to use every effort to dispose of the tobacco to the best advantage, and the *Bekkedals* agreed to give their sole attention to the buying, packing, and handling of the joint-account

holding. It was agreed that the net·profits or net losses should be shared, sixty per cent. to the *Rosenwalds* and forty per cent. to the *Bekkedals.* The contract required that the name of *E. Rosenwald & Brother* should show distinctly on each warehouse used for the packing or handling of joint-account tobacco. While the contract covered the crop of 1916, it was to continue unless terminated by three months' notice. It appeared without dispute that under the contract a large amount of tobacco was bought and stored, packed and prepared for shipment, and sold under the contract, and the net proceeds for the year 1917 was the sum of $345,296.11; that all of the business transactions relating to the sale and marketing of said tobacco were conducted, managed, and directed by the *Rosenwalds,* including the procuring of purchasers, collection of purchase price, the shipping, invoicing, insuring, and the fixing of prices, without participation therein by the *Bekkedals,* and that such sales were made to purchasers without the state of Wisconsin; that, when sales were made, the tobacco was loaded on board cars by the *Bekkedals* and shipped to purchasers directly from *Westby* and other warehouses located in Wisconsin, upon order of the *Rosenwalds;* that all the proceeds of the sales were collected by the *Rosenwalds* at their office without the state of Wisconsin, and that at the time the proceeds of such sales were received no part of the tobacco sold was located within the state of Wisconsin.

It further appeared that *M. H. Bekkedal,* on April 30, 1918, at the request of the income tax assessor, and without the actual knowledge or express authority of the *Rosenwalds,* made, signed, and filed, as was required by law, a joint return with the income tax assessor, and that upon the return so made there was assessed jointly against the partnerships an income tax for the year 1917 of $20,352.76, which amount was duly certified and placed upon the tax roll of the plaintiff village for the year 1918. It further appears that on May 1, 1918, there was assessed and levied

against the personal property belonging to the joint accountants a tax amounting to $8,657.39, which taxes were afterward paid; that out of the amount of taxes so paid the *Rosenwalds* claim the right to offset $5,194.44 and the *Bekkedals* $3,462.95 against any tax which the court might find and determine in this action is justly due from the defendants; that the *Rosenwalds* had no information as to the assessment of the taxes upon the return made and filed, before the same had been certified by the county clerk of Vernon county to the clerk of the village of *Westby.*

The case was tried by the court, and the court found upon the facts as stated that the contract between the two partnerships amounted to a partnership contract creating a partnership; that the income derived from the business of the joint account was income derived from property and business transacted within the state of Wisconsin, and that the defendants made no appearance before the county board of review for income tax assessment; allowed an offset of $8,657.29 personal property tax. The plaintiff had judgment for the remainder; from which judgment the defendants appeal.

*C. W. Graves* of Viroqua and *R. B. Graves* of Sparta, for the appellants.

For the respondent there was a brief by the *Attorney General, E. E. Brossard,* assistant attorney general, and *C. J. Smith,* district attorney of Vernon county, and oral argument by *Mr. Brossard.*

ROSENBERRY, J. The principal contention of the defendants here is that the court erred in holding that the income in question was derived from property located or business transacted within the state of Wisconsin, within the meaning of the income tax act. It is further contended that the court erred in holding that the contract of March 6, 1917, entered into by the partnerships, created a partnership.

There was a motion on the part of the plaintiff under the

provisions of sec. 3049a, Stats., to review the judgment on the ground that the trial court was in error in denying two per cent. penalty and interest at the rate of twelve per cent. per annum from January 1, 1919, to the date of the entry of judgment, together with taxable costs.

On the part of the defendants it is argued that the relationship between the defendant partnerships was that of a joint adventure rather than a partnership, and this argument is placed upon the ground that although there is admittedly a sharing of profits and losses, and community of interest, the agreement does not contemplate that each of the parties shall be the agent for the other. *Jackson v. Hooper*, 76 N. J. Eq. 185, 74 Atl. 130; *Cox v. Hickman*, 8 H. L. Cas. 268. This argument is based upon that provision of the contract which provides that the purchasing, storing, handling, and shipping of the tobacco shall be exclusively within the control of the *Bekkedals*, and that the sale and disposition of the tobacco shall be exclusively in the hands of the *Rosenwalds*. It would seem to require no argument to show that, considering the business as a whole, the *Bekkedals* were to act as agents for the *Rosenwalds* in the purchasing, storing, handling, and shipping, because the *Rosenwalds* had a sixty per cent. interest in the tobacco when purchased, and that as to the sales the *Rosenwalds* were to act as agents of the *Bekkedals*, the *Bekkedals* having a forty per cent. interest in the proceeds of the sales when made. We think the contract in question created a partnership as defined by the uniform partnership act (ch. 81m, Stats.).

Upon the other branch of the case it is argued that, because the sales are made and the proceeds collected entirely without the state of Wisconsin, all of the income of the partnership is derived from business transacted without the state of Wisconsin, and therefore not taxable under the provisions of sub. 3, sec. 1087m—2, which provides that an income tax "shall be assessed, levied and collected upon all

income, not hereinafter exempted, received by every person residing within the state, and by every nonresident of the state, upon such income as is derived from property located or business transacted within the state." By the provisions of the income tax law the term *income* includes "all profits derived from the transaction of business or from the sale of real estate or other capital assets" (sub. 2 (d), sec. 1087*m*—2). This statutory definition gives to the word *income* its ordinary meaning as used in every-day language, that is, that income is a profit or gain derived from capital or labor or from both combined. *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N. W. 87. Manifestly the total proceeds of the sales of the tobacco covered by the contract in question were not profits, hence not income. In order to determine what the profits under the contract were, it was necessary to deduct from the gross proceeds of the sales made by the *Rosenwalds* their expenses, and cost of purchasing, storing, handling, and shipping the tobacco incurred by the *Bekkedals,* and until that was done no determination could be made as to what was and what was not income, whether that term be used in the statutory sense or in its ordinary business significance. The sales made by the *Rosenwalds* were one factor, and the purchasing, etc., by the *Bekkedals* were the other factor, the combination of which produced the profit. Hence, to argue that, because the sales were entirely without the state, all of the income was derived from business without the state, when it is conceded that a large part of the business was transacted within the state, is to argue from a false premise. The partnership had an income, at least a part of which was derived from property located or business transacted within the state. The question presented is, Where and to whom was such income properly assessable? By sec. 1087*m*—22, Stats., the situs of income for purposes of taxation is that of its recipient if the recipient be a resident, and, if the recipient be a nonresident, then the tax shall be assessed,

levied, and collected in the district from which the income is derived.    Where does the partnership created by the contract of March 6, 1917, reside?    It is undisputed that the members of the *Bekkedal* firm reside in the state of Wisconsin, in the village of *Westby,* and that the members of the *Rosenwald* firm reside in the state of New York, and that the partnership business was transacted partly in the state of Wisconsin.

There are cases which hold that a partnership is a legal entity distinct and independent of the persons who compose it.    20 Ruling Case Law, p. 804, § 6, and cases cited.    It is held in *Hughes v. Gross,* 166 Mass. 61, 43 N. E. 1031, that a partnership is not an entity, and that such is the rule of the common law.    So far as we are able to discover, the question of whether or not a partnership is a legal entity distinct and separate from the persons who compose it has never been considered by this court.    In *O'Gorman v. Fink,* 57 Wis. 649, 15 N. W. 771, it was held that where partnership property is seized it is sufficient to inform the officers that exemption is claimed by all of the partners and ask that the partners be permitted to make the selection.    The holding in that case is inconsistent with the theory that a partnership has a legal entity separate and apart from the members who compose it.    Under the United States bankruptcy act of 1898 (30 U. S. Stats. at Large, 544, ch. 541) a partnership is considered as a separate and distinct entity.    21 L. R. A. n. s. 960.    On the other hand, under the diverse citizenship clause of the constitution of the United States a partnership is held, for the purposes of that clause, to reside in any state where one of the partners resides; that is, a suit begun in the state in which one of the partners resides cannot be removed on the ground of diverse citizenship.    While the question has not been directly passed upon, the reasoning of many cases before this court is based upon the theory that a partnership has no entity distinct and apart from the persons who compose it.    The partnership in ques-

tion, therefore, resided equally within the state of New York and within the state of Wisconsin.

It appears without dispute that forty per cent. of the income of the partnership belonged to the *Bekkedals.*   Under the construction given to the clause "derived from business transacted and property located within the state," in *U. S. G. Co. v. Oak Creek,* 161 Wis. 211, 153 N. W. 241, it is plain that that part of the income belonging to the *Bekkedals* was taxable within this state, it being derived wholly from property located and business transacted within this state and transactions embodying, as to the *Bekkedals,* interstate commerce.

As to that portion of the income apportioned under the contract to the *Rosenwalds,* it is income derived partly from property and business within the state of Wisconsin and partly from business transacted without the state of Wisconsin, and it should therefore have been allocated.   *U. S. G. Co. v. Oak Creek,* 161 Wis. 211, 153 N. W. 241.   As to the *Rosenwalds,* that portion of the income belonging to them must be treated as partly earned from business transacted for them by an agent, their partner the *Bekkedals,* residing within the state of Wisconsin.

The income, so far as the transaction of business within this state is concerned, being properly assessable here, the question raised is whether or not the *Rosenwalds* are estopped to dispute the assessment by reason of their failure to appear before the board of review.   Sec. 1087m—18, which provides that no person subject to assessment shall be allowed in any action or proceeding to question any assessment of income unless objection thereto shall first have been presented to the board of review in good faith and full disclosure made under oath of any and all income of such party liable to assessment; is in its general features the same as sub. 5, sec. 1061, of the Statutes.   In *State ex rel. Foster v. Williams,* 123 Wis. 73, 100 N. W. 1052, sub. 6, sec. 1061, was construed, and it was held that a taxpayer failing to

comply with the provisions of the statute is thereby prevented from thereafter questioning the assessment. While the general policy of the statute is commended in *State ex rel. Foster v. Williams, supra,* its constitutionality has never been determined, although the matter was proposed in *Milwaukee v. Wakefield,* 134 Wis. 462, 113 N. W. 34, 115 N. W. 137, and that question is not raised here. Under the cases cited and *Bratton v. Johnson,* 76 Wis. 430, 45 N. W. 412, and *Wis. Cent. R. Co. v. Ashland Co.* 81 Wis. 1, 50 N. W. 937, we see no reason why the statute should not be applied here in accordance with its terms. The matter of its constitutionality is not raised. As to the *Bekkedals,* they themselves made the return. As to the *Rosenwalds,* the return was made by their agent, who transacted the business for them within this state, and they therefore cannot complain that they were not notified of the return or that the assessment was made in accordance with it. The defendants are therefore precluded from questioning the amount of the taxes in this proceeding.

On behalf of the state it is argued that under the provisions of sec. 1087m—26 the defendants are not entitled to offset personal property taxes in this suit, for the reason that the defendants have not paid the tax and are therefore not entitled to offer the tax upon the personal property as an offset. While under a strict construction of the statute it might be argued that the tax when paid in the form of a judgment is not paid to the city, town, or village, in the sense that payments are not made directly to them, we are of the opinion that the deduction of the amount of the personal property tax from the amount to be paid to the village is authorized, inasmuch as it is the intent of the statute to give to the taxpayer this right. The statute prescribes a method rather than defines a right. The penalty prescribed by the statute (sec. 1090) in the event that the tax is not paid within the time prescribed becomes a part of the tax and payable with it. *State ex rel. Portage Co. D. Dist. v.*

*Newby,* 169 Wis. 208, 171 N. W. 953. The trial court was therefore in error in disallowing the penalty of two per cent. amounting to $233.90. We are also of the opinion that under sec. 1126 the tax bore interest at the rate of' twelve per cent. per annum from the 1st day of January, 1919, instead of six per cent. The judgment, therefore, should be modified so as to include the penalty, and the sum of $656.11 to make the interest twelve per cent.; and as so modified will be affirmed.

*By the Court.*—Judgment affirmed as modified.