24221. MONTAG BROTHERS INC. *v.* STATE REVENUE COMMISSION.

661

DECIDED FEBRUARY 13, 1935.   REHEARING DENIED FEBRUARY 27, 1935.

*Herbert J. Haas, Bertram S. Boley, Joseph F. Haas,* for plaintiff in error.

*M. J. Yeomans, attorney-general, B. D. Murphy, J. T. Goree, assistant attorneys-general,* contra.

JENKINS, P. J. The affidavit of illegality to the levy of a tax execution involves a construction of sections 4 and 15 of the State income-tax act of 1931, in determining whether, under the facts, the defendant corporation, organized in Delaware but domesticated in Georgia, was subject to taxation as to all of its net income, or only on such portion of this income as can be reasonably attributed to business within the State, the defendant contending that its business was not carried on entirely within the State, but partly within and partly without the State. It was agreed that, if the contentions of the Revenue Commission are correct, the execution was issued for the proper amount of $1253.77 and interest; but that, if the defendant is correct, the proper percentage of net income on the business which should be allocated to Georgia would be

73 per cent., and the defendant would be thus due to the State $385.93. The essential stipulated facts are as follows: In the taxable year in question, the defendant's only office, place of business, and plant for the manufacture of its stationery, were in Atlanta, Georgia, although it maintained a sales office in New York with samples and office equipment amounting to $2500, and one of its bank accounts in New York, a sample room in Chicago for six months during the fiscal year, and traveling salesmen operating out of the State, all of which subordinate sales office, sample-room, and salesmen were managed and directed from its Atlanta office, the executive supervising the New York office living in Atlanta, although making frequent trips to New York; that all goods were shipped from its Atlanta plant, and it maintained no warehouse or stock of goods elsewhere; that all of its business is managed and directed from its Atlanta office, the prices of goods being fixed there, and payments by purchasers being made there; that in its several kinds of sales, some were made to customers within the State, and some to mail-order customers out of the State. As to these groups there is no contention, but the defendant insists that its sales to department stores and one large wholesale drug concern out of the State constituted business for which it was not liable to pay a tax to the State on its net income. This trade was handled as follows: The defendant's salesmen out of the State would submit samples to these customers' buyers and prepare orders in duplicate, which the buyers would sign after writing thereon "subject to confirmation." The original order would be sent to the defendant's Atlanta office, and if the duplicate order was approved by the customer's proper executive, it would so notify the defendant in Atlanta, and the goods would be shipped therefrom according to the terms of the order. Some of these goods were shipped f. o. b. Atlanta, and some f. o. b. destination. The judge, passing without a jury on the stipulated facts, found in favor of the State and against the affidavit of illegality.

Pertinent parts of the income tax act of 1931 are as follows: Section 4 provides that "every domestic corporation, and every foreign corporation, shall pay annually an income tax equivalent to 4% of the net income from property owned or from business done in Georgia, as is defined in section 15 of this act." Section 15 and subdivision (b) thereof provide: "The tax imposed by

this act shall apply to the entire net income, as herein defined, received by every domestic corporation, and every foreign corporation owning property or doing business in this State. . . (b) If the trade or business of the corporation is carried on entirely within the State, the tax shall be imposed on the entire business income, but if such trade or business is carried on partly within and partly without the State, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within the State, to be determined as follows:" Preceding subsection (a) of section 15 as a title in connection with the subsections following are the words "Allocation and Apportionment of Income." Following the quoted portion of subsection (b) provision is made for a division of tax on "interest and rents . . . received in connection with business in the State," which are "allocated to the State," and those "received in connection with business outside of the State," which are "allocated outside of the State;" and for a division of tax on "gains from the sale of capital assets or property held, owned, or used in connection with the trade or business, . . but not for sale in the regular course of business," which are allocated to the State "if the property sold is real or tangible personal property situated in the State, or intangible property connected with business in the State," but which otherwise are "allocated outside of the State." Other subsections of section 15, which follow, make provision for the allocation and apportionment of other "net business income" from intangible property and other assets. Subsection (c) then provides: "Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the State shall be taken to be such percentage of the total of such income as the tangible property and business within the State bear to the total tangible property and total business, the percentage of tangible property and of business being separately determined and the two percentages averaged."

1. The taxing powers of a State with regard to its own residents and citizens and nonresidents are "necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property, and business. . . Unless restrained by provisions of the Federal constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to

which it applies are within her jurisdiction. . . Just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the State, or their occupations carried on therein; enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders." Shaffer v. Carter, 252 U. S. 37, 52 (40 Sup. Ct. 221, 64 L. ed. 445, 456), and cit.; Travis v. Yale &. Towne Mfg. Co., 252 U. S. 60 (40 Sup. Ct. 228, 64 L. ed. 460). While as to nonresident individuals and foreign corporations the power of the State to tax incomes on property or business does not extend to sources where both the property and the business producing the income are located outside the State, this restriction does not cover resident individuals and domestic corporations; and as to them it has been generally held that their income is taxable, whether it be derived from sources within or without the State. Maguire v. Tax Commr., 230 Mass. 503 (120 N. E. 162), affirmed 253 U. S. 12 (40 Sup. Ct. 417, 64 L. ed. 739); State v. Gulf R. Co., 138 Miss. 70 (104 So. 689); Lawrence v. Miss. State Tax Comm. (Miss.), 137 So. 503; Village of Westby v. Bekkedal, 172 Wis. 114 (178 N. W. 451); Kirtland v. Hotchkiss, 100 U. S. 491 (25 L. ed. 558); 61 C. J. 1561, 1562. The defendant corporation in this case, after being organized under the laws of Delaware, was domesticated under the laws of Georgia, and under our statutes thereby became subject to the same "obligations, duties, liabilities, and disabilities as if originally created under the laws of Georgia." Code of 1933, § 22-1601. Whether or not in becoming thus domesticated it subjected itself to the same rules of taxation as control corporations created in this State, and could claim, as a nonresident corporation, other taxation rights and privileges under the Federal constitution, no such constitutional question properly arises in this case. Section 4 of the State income-tax act of 1931 (Ga. L. Ex. Sess. 1931, p. 26), here involved, imposes the same rules. and restrictions on resident as on nonresident corporations. Nor does the measurement of the tax or the means of enforcement discriminate against interstate commerce; and therefore the fact that sources of the tax incidentally involve interstate-commerce transactions in computing the taxable

net income of the taxpayer does not contravene the interstate-commerce clause in the Federal constitution. U. S. Glue Co. *v.* Oak Creek, 247 U. S. 321 (38 Sup.. Ct. 499, 62 L. ed. 1135); Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113 (4 Sup. Ct. 45, 65 L. ed. 165, 169).

2. While revenue statutes are to be construed strictly and so as to resolve doubts in favor of the taxpayer (*Myslyle Hosiery Shops* v. *Harrison,* 171 *Ga.* 430, 155 S. E. 765; *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23), and all State statutes are generally to be construed so as to apply to words their "ordinary signification" (Civil Code of 1910, § 4, par. 1); yet the courts in their interpretation of all statutes must look to the entire act and the intention of the legislature as thus manifested.

3. In the instant case, involving a construction of sections 4 and 15 of the income-tax act of 1931 (Ga. L. Ex. Sess. 1931, pp. 26, 34-36), and a determination of the question whether the defendant corporation in the tax execution was subject to a tax on all of its income, as contended by the State, or on only such part thereof as was reasonably attributable to business within the State, as contended by the defendant, if the language of subdivision (b) and the following subdivisions of section 15 be taken independently of all other parts of the act, it might tend to support the latter construction. Subdivision (b) provides that, "if the trade or business of the corporation is carried on entirely within the State, the tax shall be imposed on the entire business income, but if such trade or business is carried on partly within and partly without the State, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within the State." The methods of "allocation and apportionment" of the income, where the "trade or business is carried on partly within and partly without the State," are then set forth. But all of these provisions, as to which the words "entirely" and "partly" are emphasized by the defendant, expressly relate to the "trade or business" of the corporation, in determining the proper apportionment, *provided the income is one for apportionment;* and they should be construed, not only with the preceding language in section 15, that "the tax imposed by this act shall apply to the entire net income, as herein defined, received by every domestic and every foreign corporation owning property or doing business in this State," but especially

with that part of the act which imposes the tax itself. Section 4 provides that "every domestic corporation, and every foreign corporation, shall pay annually an income tax equivalent to four per cent. of the *net income from property owned* or from business done *in Georgia,* as defined in section 15 of this act." The tax being thus imposed upon the "net income from property owned" in the State as well as "from business done" in the State, where, as under the stipulated facts of this case, a domesticated corporation maintained its only office and place of business in this State, owned and manufactured all its goods therein, and received therein all the proceeds from its sales made within and without the State, all from its State-owned plants and products manufactured in this State, and all from its State-owned property and State-managed business and office, from which it merely sent out samples and operated a subordinate sales office with office equipment and salesmen out of the State under the control of its State office and an executive living within the State, its entire net income from these sales would be subject to the tax, whether it be deemed a resident corporation, or a nonresident corporation with the right of invoking the inhibitions of the fourteenth amendment to the Federal constitution, since neither the imposition by the statute nor the collection of such a tax would contravene that amendment. The fact that part of the sales were made in interstate commerce, or that the title to some of the goods may have passed to purchasers outside the State, or even that some of the sale contracts might be taken as made outside the State (construing in favor of the taxpayer the ambiguous stipulation in regard to the time and place of "confirmation" and the closing of sales), would not relieve the seller from tax upon the net earnings from such sales, where the manufacturing plant was located, the products were manufactured and owned, the shipments and payments were made, and every important step connected with the manufacture, distribution, sales, collection, and earnings occurred in Georgia. Construing the act as a whole, and so as to give effect to the language imposing the tax on the "net income from property owned in this State," as well as on the net income from "business" therein, the language in section 15, "if the trade or business is carried on entirely within the State," and "if such trade or business is carried on partly within and partly without the State," must be held to limit only the words "trade or business"

*in immediate* connection with which it is used, rather than the word "property" in section 4, imposing the tax. The manifest purpose of section 15 as indicated by the title "allocation and apportionment" is not to define and restrict the levy of the tax, but to provide methods of calculation for apportioning to the State its proper share in cases where the net income arises from both intrastate and extrastate business, or from properties owned partly within and partly without the State. Only such a construction will avoid a nullification of the essential part of section 4 that covers the ownership of "property," and effect the legislative purpose to impose the tax in all cases where the income arises solely from properties owned entirely within the State. A like conclusion was reached by this court in sustaining a collection of the tax, where the income was earned from moneys owned within the State, but used out of the State in the purchase of tax-certificates and other evidences of tax indebtedness, in the recent case of *Interstate Bond Co.* v. *State Revenue Commission,* 50 *Ga. App.,* post. Similar provisions in the Wisconsin income-tax law have been construed as rendering the entire net income taxable. U. S. Glue Co. *v.* Oak Creek, 161 Wis. 211 (153 N. W. 241, Ann. Cas. 1918A, 421). Under the statutes or the facts in cases relied upon by the plaintiff in error, only the taxability of the net income from business done out of the State, or done partly outside and partly within the State, or from properties owned out of the State, or partly outside and partly within the State, was involved; and not, as in this case, the taxability of net income earned entirely from properties owned wholly within the State. The court therefore did not err in ruling against the affidavit of illegality.

*Judgment affirmed. Sutton, J., concurs. Stephens, J., dissents.*